**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY WIPPOLD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 4:25-cv-889 |
| AMERICAN MULTISPECIALTY GROUP, INC., doing business as ESSE HEALTH, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

<u>**NOTICE OF REMOVAL**</u>

Defendant American Multispecialty Group, Inc. d/b/a Esse Health ("Esse Health"), by and through the undersigned counsel, hereby removes Case No. 2522-CC00957, *Mary Wippold, individually and on behalf of all other similarly situated v. American Multispecialty Group, Inc., d/b/a Esse Health* from the Circuit Court of St. Louis City, Missouri ("State Court Action"), to the United States District Court for the Eastern District of Missouri.  Esse Health removes the State Court Action under 28 U.S.C. §§ 1331, 1367(a), 1442(a), 1441, 1446, and 1453 on the factual and legal grounds discussed below.

1.     On May 20, 2025, Plaintiff Mary Wippold ("Plaintiff") filed a putative class action lawsuit against Esse Health in the Circuit Court of St. Louis City, Missouri (the "State Court"). A true and accurate copy of the Class Action Complaint ("Complaint") together with "all process, pleadings, and orders" on file in the State Court are attached hereto as <u>**Exhibit A**</u>.

2.     The Complaint alleges claims for negligence (Count I), negligence *per se* (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), invasion of privacy—public disclosure of private facts (Count V), and violation of the Missouri Merchandising

Practices Act ("MMPA") (Count VI) against Esse Health based on allegations that Plaintiff's Private Information, and the Private Information of the putative class, was compromised as a result of a cybersecurity event. *See* Compl. ¶¶ 4-5, 16, 25, 30, 61-62.

3.      Plaintiff seeks equitable, injunctive, and monetary relief from Esse Health.  With regard to monetary relief, Plaintiff requests "compensatory, actual, exemplary, and punitive damages, as allowed by law."  Compl. *ad damnum* clause ¶ B.  Plaintiff also seeks an award of "attorneys' fees and costs, as allowed by law."  *Id.* ¶ F.

4.      Esse Health was served with a summons and the Complaint on May 28, 2025.

5.      Based on the allegations of the Complaint, and for the reasons discussed below, Esse Health timely removes this action pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441, 1442(a), 1446, and 1453.

## FEDERAL QUESTION JURISDICTION

6.      Esse Health removes the State Court Action under 28 U.S.C. § 1331.

7.      Federal courts have original jurisdiction over all civil actions "arising under" federal law.  *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521 (8th Cir. 2020).  Whether a claim "arises under" federal law depends on the contents of the well-pleaded complaint. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  "When determining whether a case 'arises under' federal law, resolution depends on whether a federal forum may entertain a state law claim implicating a disputed and substantial federal issue 'without disturbing any congressionally approved balance of federal and state judicial responsibilities.'"  *Wullschleger*, 953 F.3d at 521 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

8.      The Complaint is replete with allegations regarding federal law.

9.      Plaintiff alleges that Esse Health had obligations to "implement basic data security practices" created by the Federal Trade Commission Act (15 U.S.C. § 45) (the "FTC Act") and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Compl. ¶ 87 (FTC Act); *see also* Compl. ¶ 82 ("The [FTC] has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices."); Compl. ¶¶ 82-88 (allegations regarding the FTC Act and enforcement of the FTC Act by the FTC relating to data security); Compl. at ¶¶ 89-94 (extensive allegations relating to HIPAA); Compl. ¶¶ 158-165 (extensive allegations regarding Esse Health's alleged violations of the FTC Act and HIPAA).

10.      Plaintiff alleges that Esse Health failed to comply with the FTC Act and HIPAA. *See* Compl. ¶ 87 ("Defendant [sic] failure to employ reasonable and appropriate measures to protect against unauthorized access to patient Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45."); Compl. ¶ 92 ("The Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations."); Compl. ¶ 164 ("Defendant breached its duties to Plaintiff and Class Members under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.").

11.      Plaintiff's negligence *per se* claim (Count II) is based almost entirely on alleged violations of the FTC Act and HIPAA by Esse Health.  *See* Compl. ¶ 158 ("Pursuant ot the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information."); Compl. ¶ 159; Compl. ¶ 160 (alleging Esse Health "under HIPAA . . . had the duty to implement safeguards to prevent the misuse of the information and to ensure the confidentiality, integrity, and availability

of PHI/Private Information."); Compl. ¶ 161 ("Defendant violated its duties under Section 5 of the FTC Act, as well as HIPAA, by failing to use reasonable measures to protect Plaintiff's and the Class's Private Information . . . ."); Compl. ¶ 162; Compl. ¶ 164 (alleging that Esse Health "breached its duties to Plaintiff and Class Members under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information."); Compl. ¶ 165 (alleging that Esse Health's "violations of Section 5 of the FTC Act and its failure to comply with applicable laws and regulation, including HIPAA, constitutes negligence *per se*.").

12.    Plaintiff's breach of implied contract claim (Count III) is also premised on federal law. *See* Compl. ¶ 178 ("Esse further breached the implied contracts with Plaintiff and the Class Members by: . . . Failing to comply with industry standards, as well as legal obligations [e.g., per Plaintiff's allegations, the FTC Act and HIPAA] that are necessarily incorporated into the parties' agreements . . . .").

13.    Plaintiff's MMPA claim (Count VI) is likewise premised on federal law.  *See* Compl. ¶ 224 (Esse Health's "unfair acts and practices include: … (b) failing to follow industry standard and the applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data; . . . (e) Omitting, suppressing, and concealing the material fact that it did not comply with . . . statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act . . . and HIPAA."); Compl. ¶ 225 ("Defendant's unlawful, unfair, and deceptive acts and practices include: . . . (c) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act . . . and HIPAA, which was a direct and proximate cause of the Data Breach; . . . (e)

Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act . . . and HIPAA.").

14.    Plaintiff's requested relief also invokes federal law because Plaintiff seeks injunctive and equitable relief against Esse Health that necessarily requires the interpretation and application of federal law.  *See, e.g.*, Compl. *ad damnum* clause ¶ D (requesting declaratory and other equitable relief against Esse Health "as is necessary to protect the interests of Plaintiff and the Class [i.e., from harms related to Esse Health allegedly failing to comply with the FTC Act and HIPAA]"); Compl., *ad damnum* clause ¶ E (requesting injunctive relief against Esse Health "as is necessary to protect the interests of Plaintiff and the Class [i.e, from harms related to Esse Health allegedly failing to comply with the FTC Act and HIPAA]").

15.    The federal issues raised by the Complaint are substantial because they implicate important issues regarding the collection, storage, and use of Personal Health Information ("PHI") and Personal Identifying Information ("PII").  Plaintiff's claims require a determination of whether Esse Health's data security practices violated the FTC Act and HIPAA, which necessitates a determination of what data security standards, practices, and safeguards are imposed or required by the FTC Act and HIPAA.  Based on the allegations in the Complaint, this will include review, analysis, and interpretation of numerous FTC "guides for businesses which highlight the importance of implementing reasonable data security practices."  Compl. ¶ 82. It will also require review, analysis, and interpretation of provisions of HIPAA's Privacy Rule. *Id*. ¶¶ 102-103.

16.    There is significant federal interest in consistent interpretation and application of these laws, regulations, guidelines, and tools to healthcare providers. Differing interpretations of these laws, regulations, guidelines, and tools by various state courts in the context of data breach

litigation risks the creation of a patchwork of differing standards and interpretations. Such a landscape would be confusing to healthcare providers seeking to comply with the FTC Act and HIPAA by making the required data security standards under those statutes, regulations, guidelines, and tools unclear, potentially inconsistent, and difficult to follow. Moreover, given Plaintiff's allegations regarding the growing number of healthcare data breaches (*see* Compl. ¶¶ 65-73), and the pervasiveness of data breach class action litigation, resolution of Plaintiff's claims could have impact far beyond this specific case. This alone makes the federal issues in this case substantial and justifies the Court exercising federal question jurisdiction over the Complaint. *See Pet Quarters, Inc. v. Depository Tr. and Clearing Corp.,* 559 F.3d 772, 779 (8th Cir. 2009) ("Claim 12 presents a substantial federal question because it directly implicates actions taken by the Commission in approving the creation of the Stock Borrower Program and the rules governing it. Resolution of this dispute would control the outcome in numerous other cases.").

17.    Esse Health denies that it violated the FTC Act and HIPAA or any other federal, state, or local law.  Thus, this case involves a disputed federal issue. *See Hawkins v. SSM Health Care Corp.,* No. 4:23-CV-633 RLW, 2023 WL 4363901, at *4 (E.D. Mo. July 6, 2023) (finding "the federal issue is clearly in dispute—Defendants explicitly aver that their practice . . . does not violate federal regulations.").

18.    The Court's adjudication of Plaintiff's claims will not upset the balance of federal and state judicial responsibilities.  Indeed, these federal issues are already going to be addressed in federal court because there is another putative class action involving substantially similar claims filed against Esse Health that was filed five days before this case and is currently pending in this Court.  *See Clausner v. American Multispecialty Group Inc., d/b/a Esse Health*, Case No. 4:25-CV-00711, ECF (E.D. Mo. May 15, 2025).  Moreover, other federal courts have found removal

appropriate to allow federal courts to address unique federal questions posed by a plaintiff's claims where, as here, those claims necessarily implicate federal law. *See, e.g.*, *Hawkins*, 2023 WL 4363901, at \*4-5 (finding it appropriate for a federal court to determine whether disputed fees violated a federal regulation, even though premised on a state law cause of action, and permitting removal on this basis); *see also Grable*, 545 U.S. at 314-16 (finding it appropriate for a federal court to determine whether the IRS complied with its obligations under federal law even though premised on a state law cause of action, and permitting removal on this basis); *Pet Quarters, Inc.*, 559 F.3d at 779 (finding it appropriate for a federal court to resolve plaintiffs' challenge to a program approved by the SEC pursuant to its statutory authority, even though premised on a state law cause of action, and permitting removal on that basis); *Bader Farms Inc. v. Monsanto Co.*, No. 1:16-CV-299 SNLJ, 2017 WL 633815, at \*3 (E.D. Mo. Feb. 16, 2017) (finding it appropriate for a federal court to interpret and apply the federal regulatory process of the Animal and Plant Health Inspection Service to resolve plaintiffs' claims, even though premised on a state law cause of action, and permitting removal on this basis).

19.     Based on the allegations in the Complaint and the relief sought by Plaintiff, the federal issues surrounding Plaintiff's state law claims is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Bader Farms Inc.*, 2017 WL 633815, at \*3. Said another way, Plaintiff's "dependence on federal law permeates the allegations [in the Complaint] such that [Plaintiff's claims] cannot be adjudicated without reliance on and explication of federal law." *Wullschleger*, 953 F.3d at 522. Thus, the Complaint is properly removed to this Court under 28 U.S.C. § 1331. *See Wullschleger*, 953 F.3d at 522; *Hawkins*, 2023 WL 4363901, at \*1; *Pet Quarters, Inc.*, 559

F.3d at 779 (affirming removal of an entire case because one state law claim presented a substantial federal question regarding the statutory authority of the Securities and Exchange Commission).

20. The Eighth Circuit's decision in *Wullschleger* is instructive and supports removal jurisdiction here. In *Wullschleger*, the plaintiffs asserted various state law claims alleging that the defendants violated the federal Food Drug and Cosmetic Act ("FDCA"). *See Wullschleger*, 953 F.3d at 520. The complaint in *Wullschleger* "explicitly claim[ed] that defendants violated the FDCA, were non-compliant with FDA guidance, and that [the defendants'] refusal to submit the prescription pet food to FDA review was improper." *Id.* at 522. Like the complaint in *Wullschleger*, the Complaint is replete with references to federal law such that the Court cannot adjudicate Plaintiff's negligence or breach of implied contract claims without getting entangled in the FTC Act and HIPAA. *See id.* ("Plaintiffs' dependence on federal law permeates the allegations such that the antitrust and unjust enrichment claims cannot be adjudicated without reliance on and explication of federal law.").

21. This Court's recent decision in *Hawkins v. SSM Health Care Corp.,* No. 4:23-CV-633 RLW, 2023 WL 4363901 (E.D. Mo. July 6, 2023) is also analogous and supports removal jurisdiction here. In *Hawkins,* plaintiffs filed a putative class action lawsuit in the Circuit Court for the City of St. Louis, Missouri which asserted three causes of action, including a cause of action for negligence *per se. Hawkins*, 2023 WL 4363901, at *1. In support of plaintiffs' negligence *per se* claim, the complaint asserted that defendants violated both a state statute and a federal regulation. *Id.* at *2. Defendants removed the lawsuit pursuant to 28 U.S.C. § 1331, on the basis that the plaintiffs' claim for negligence *per se* required the court to interpret and apply 42 C.F.R. § 180.50, a federal regulation. *Id.* at *2. Plaintiffs moved to remand, but this Court denied that motion. As an initial matter, the court determined the state statute plaintiffs cited in partial support

- 8 -

of their negligence *per se* claim was not applicable to the conduct giving rise to plaintiffs' claim. In so finding, the court determined that "[p]laintiff's **only** avenue to relief is through . . .a federal regulation" such that the complaint "necessarily raises a federal issue." *Id.* at *4 (emphasis added). The court found that the federal issue was also "substantial" because the court would "have to interpret and decide the negligence per-se issue on its interpretation of federal law." *Id.*[1]

22.     The Court can exercise supplemental jurisdiction over Plaintiff's other claims— unjust enrichment (Count IV), invasion of privacy (Count V), and—to the extent the claims do not raise a substantial federal question—breach of implied contract (Count III) and violation of the MMPA (Count VI). These claims "are so related to" Plaintiff's negligence (Count I) and negligence *per se* claim (Count II) "that they form part of the same case or controversy under Article III of the United States Constitution" and thus qualify for removal pursuant to the doctrine of supplemental jurisdiction.  28 U.S.C. § 1367(a).  The claims in the Complaint meet the test articulated by the Supreme Court in *United Mine Workers of America v. Gibbs*.  *See* 383 U.S. 715 (1966) ("The state and federal claims must derive from a common nucleus of operative fact.  But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.").   In particular, each of Plaintiff's claims assert that Esse Health's alleged acts and omissions cause or contributed to case the cybersecurity incident, resulting in alleged harm to Plaintiff's and the putative class.  Plaintiff's state law claims, and thus the entire action, is removable on that separate basis.

---

[1] *But see Doe v. SSM Health Corp.*, No. 4:24-CV-00317-SEP, 2024 WL 2131756 (E.D. Mo. May 13, 2024) (granting motion to remand data breach case removed on the basis of substantial federal question jurisdiction).

## **FEDERAL OFFICER JURISDICTION**

23.     Esse Health alternatively removes the State Court Action under 28 U.S.C. § 1442(a).

24.     "The federal officer removal statute 'grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction.'" *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021) (quoting *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012)).  Section 1442(a) "authorizes removal of any civil action commenced in state court that is brough against an 'officer (*or any person acting under that officer*) of the United States or of any agency therefore, in an official or individual capacity, for or relating to any act under color of such office." *Id.* (quoting 28 U.S.C. § 1442(a)(1)) (italics in original).   "The federal officer statute is to be 'liberally construed,' and thus the typical presumption against removal does not apply." *Id.*

25.     A private entity, like Esse Health, that is not itself a federal officer or agency, may remove a case under Section 1442(a) by making a threshold showing that "(1) it acted under the direction of a federal officer, (2) there is a causal connection between [Esse Health's] actions and the official authority, (3) [Esse Health] has a colorable federal defense to the plaintiff's claims, and (4) [Esse Health] is a 'person,' within the meaning of the statute." *Id.* If these requirements of Section 1442(a)(1) are satisfied, the right to remove is absolute.  *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) ("[T]he right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in federal court.").

26.     Esse Health meets all four of the requirements for removal under Section 1442(a).

*Esse Acted Under A Federal Officer*

27.    Esse Health acted under the direction of the federal government through the performance of various responsibilities and services that were delegated to Esse Health from Medicare Advantage ("MA") plans who administer Medicare benefits under the authority of the federal government.

28.    "Although 'not limitless, the words 'acting under' are broad.'" *Buljic*, 22 F. 4th at 738 (quoting *Jacks*, 701 F.3d at 1230). In the Eighth Circuit, "a party acts under a federal officer, within the meaning of the federal officer removal statute, only when it performs a 'basic governmental task.'" *Doe v. BJC Health System*, 89 F.4th 1037, 1043 (8th Cir. 2023). "The private entity's 'actions must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior,' and this relationship 'typically involves subjection, guidance, or control." *Buljic*, 22 F.4th at 738 (first quoting *Jacks*, 701 F.3d at 1230; and then quoting *Watson*, 551 U.S. at 151).

29.    Medicare is a federally operated health insurance program for people 65 or older, and some people under 65 with certain disabilities or conditions. *See* 42 U.S.C. §§ 1395 *et seq*. The Secretary of Health and Human Services administers Medicare through the Centers for Medicare & Medicaid Services ("CMS"). Medicare consists of four main parts—Part A, Part B, Part C, and Part D.

30.    Parts A and B of the Medicare Program are known as "traditional" Medicare. Part A covers inpatient and institutional care. Part B covers physician, hospital, outpatient, and ancillary services and durable medical equipment. In the traditional Medicare program, Parts A and B, CMS reimburses health care providers for benefits covered under Medicare Parts A and B. Parts A and B use the fee-for-service system, in which providers submit claims to CMS for healthcare services provided (e.g., a physician office visit or hospital stay), and then CMS pays

the providers directly for those services based on payment rates pre-determined by the federal government.

31.     Medicare Part C establishes the MA program.  Under Medicare Part C, Medicare beneficiaries may opt out of traditional Medicare and instead choose to receive healthcare services by enrolling in MA plans.  *See* 42 U.S.C. §§ 1395w-21 to 1395w-28.  MA plans are run by private insurers known as MA Organizations ("MAOs").  *See* 42 C.F.R. §§ 422.2, 422.503(b)(2).  MAOs contract with CMS to provide services to people who are eligible for Medicare (*see* 42 U.S.C. §§ 1395w-21 to 1395w-28) and must provide coverage that is at least equivalent to Parts A and B.  MAOs are delegated significant authority from CMS to administer the MA program and are empowered to contract with first-tier entities (i.e., hospital networks, physician groups, and other providers) to furnish healthcare services under the MA plans and also may "delegate any activity required under or governed" by the Medicare Act to those first-tier entities.  *Medicare Managed Care Manual*, ch. 11, § 110.2; *see* 42 C.F.R. § 422.504(i)(4).

32.     A number of courts around the country have found that MAOs are "acting under" CMS because they administer Medicare benefits through a private market, which helps CMS fulfill a basic government task of providing Medicare benefits.  *See, e.g.*, *Body & Mind Acupuncture v. Humana Health Plan, Inc.*, No. 1:16CV211, 2017 WL 653270, at *5 (N.D. W. Va. Feb. 16, 2017); *Inchauspe v. Scan Health Plan*, No. 2:17-cv-06011-CAS, 2018 WL 566790, at *5 (C.D. Cal. Jan. 23, 2018) ("The Court agrees with the majority of district courts which have held that MAOs administering Part C benefits fall within the category of highly regulated private contractors described in *Watson* and thus are 'acting under' CMS in a manner that entitles them to removal under § 1442(a)(1)."); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. Dec. 10, 2014); *Hepstall v. Humana Health Plan, Inc.*, No. 18-0163, 2018

- 12 -

WL 4677871, at *5 (S.D. Ala. July 3, 2018).[2]  This includes courts within the Eighth Circuit.  *See*

*McWilliams v. Aetna Health of Iowa, Inc.*, No. 4:24-cv-00193, 2024 WL 5054955, at *5 (S.D.

Iowa Sept. 20, 2024) (discussing Eighth Circuit federal officer precedent and concluding that an

MAO was acting under CMS for purposes of federal officer jurisdiction).

33.     Esse Health is a "first-tier" entity that contracts directly with multiple MAOs.  *See*

Declaration of Sean McLaughlin, ¶ 5. These MAOs include Aetna Medicare, Blue Cross Blue

Shield Medicare Advantage, Essence Healthcare, Humana Medicare Advantage, and UHC

Medicare Advantage.  *Id.*  Under these contracts, Esse Health is contractually delegated services

that the MAOs are legally obligated to provide to administer the Medicare benefit on behalf of

CMS.  *Id.*  Esse Health must perform these delegated responsibilities in accordance with the

MAOs' own complex regulatory and contractual obligations to CMS.  *See* 42 C.F.R. §

422.504(i)(2)(i)-(iv); *see also* Dec. of Sean McLaughlin, ¶ 5.

34.     The responsibilities delegated to Esse Health by these MAOs include, but are not

limited to, the following:

      a.     <u>Administering Payments</u>.  At least one of the contracts between Esse Health

and an MAO delegates to Esse Health the responsibility to pay for primary care services

provided to Esse Health members (i.e., instead of the MAO paying claims to health care

providers for primary care services, the MAO delegates this obligation to Esse Health to

pay).  Dec. of Sean McLaughlin, ¶ 6(a).  Paying claims for healthcare services provided to

Medicare beneficiaries is a basic governmental task that CMS would have to undertake and

---

[2] The only Circuit Court to address this issue is the Sixth Circuit, which took a narrow view of the acting under requirement and held, in an unpublished opinion, that the MAO at issue in that case was not acting under CMS for purposes of federal officer removal.  *See Ohio State Chiropractic Ass'n v. Humana Health Plan, Inc.*, 647 F. App'x 619, 621-25 (6th Cir. 2016).  Multiple district courts have criticized and refused to follow *Ohio State Chiropractic Ass'n*. *See Hepstall*, 2018 WL 4677871 at *4-5 (refusing to follow *Ohio State Chiropractic Ass'n* and discussing two other district courts that have refused to do so).

perform (and does undertake and perform) for Medicare beneficiaries electing coverage under traditional Medicare (i.e., Parts A and B).  It is also a basic governmental task that MAOs are delegated by CMS, and are required to perform on CMS's behalf, for Medicare beneficiaries electing coverage under an MA plan (i.e., Part C).

   b.   <u>Assuming Risk</u>.  Some of Esse Health's contracts with MAOs delegate the assumption of risk of the cost of patient care to Esse Health.  *Id.* at ¶ 6(b).  Under the MA program, MAOs are paid a capitated payment per member and are then responsible for the total cost of healthcare for those members.  This puts MAOs "at risk" because the MAO bears the financial risk of a MA member's total cost of healthcare exceeding the capitated payment amount.  Some of Esse Health's contracts with MAOs delegate part of this risk to Esse Health.  *Id.*  For example, at least one MAO pays Esse Health a capitated payment per member and requires Esse Health to be responsible for the total cost of healthcare for those members – so Esse Health is "at risk" if the total cost of healthcare exceeds that capitated payment amount.  *Id.*  Other MAO contracts set a target amount for the total cost of health care for Esse Health's members with Esse Health being required to pay the MAO "losses" if its members' total cost of healthcare exceeds the target.  *Id.*  Being "at risk" for the total cost of healthcare for Medicare beneficiaries is a basic governmental task (i.e., CMS is "at risk" for the total cost of healthcare under traditional Medicare) and requires Esse Health to perform another basic governmental task of managing the healthcare of its MA plan members to minimize this risk.  *Id.*

   c.   <u>Performing Quality Improvement Functions</u>. Several of Esse Health's contracts with MAOs require Esse Health to perform quality improvement functions – i.e., to take affirmative steps to improve the quality of healthcare provided to MA plan

members. *Id.* at ¶ 6(c).  Taking affirmative steps to improve the quality of healthcare is a basic function necessary to administer Medicare benefits.  With regard to MA plans, CMS delegates this basic governmental task to MAOs (see detailed requirements imposed upon MAOs in Subpart D of Part 422), and the MAOs have, in certain instances, further delegated to Esse Health.

35.     CMS maintains significant oversight and control over the performance of the responsibilities delegated to Esse Health.  For example, the Department of Health and Human Services is authorized to "audit, evaluate, collect, and inspect any [of Esse Health's] records."  42 C.F.R. § 422.504(i)(2)(i)-(iv).  CMS may also require revocation of responsibilities delegated to Esse Health if it determines that Esse Health has not performed satisfactorily.  *See* 42 C.F.R. § 422.504(i)(4)(ii).   Finally, Esse Health must comply with all applicable Medicare laws, regulations, and CMS instructions.  42 C.F.R. § 422.504(i)(4)(v); *see also Medicare Managed Care Manual*, ch. 11, §§ 100.1, 110.1 (requiring all Medicare entities to agree to dozens of CMS regulations as part of any delegation arrangements).  These facts support the conclusion that that Esse Health's performance of delegated responsibilities goes well beyond simple compliance with the law. *See Jacks*, 701 F.3d at 1234 (finding that being subject to federal government oversight, subject to federal government requirements, ultimately answering to federal officers, and the federal officer being able to withdraw approval or terminate the contract were "[a]ll . . . factors support[ing] the conclusion that BCBS-KC's assistance goes well beyond simple compliance with the law for purposes of removal under § 1442(a)(1).").

36.     Esse Health acted under a federal officer (i.e., CMS) by performing the basic governmental task of the administration of the Medicare program benefits, as delegated by the MAOs, to Esse Health's patients who are enrolled in Medicare Part C.  In performing delegated

responsibilities on behalf of the MAOs, Esse Health acted on the federal government's behalf to perform or help the government perform federal duties of administering Medicare benefits. Stated another way, Esse Health assists in carrying out the duties that CMS is obligated to provide to Medicare eligible individuals and therefore CMS would be obligated to administer and provide these Medicare duties itself if Esse Health did not administer and provide them as a first-tier entity to the MAO.

37.     The *Escarcega* decision is on point and supports the conclusion that Esse Health, in its role as a first-tier entity that is contractually delegated certain responsibilities by MAOs, is "acting under" a federal officer. In *Escarcega*, the court held that a first-tier entity, like Esse Health, "act under" federal officers for purposes of federal officer removal:

> By administering Medicare benefits, MAOs and downstream entities "assist, or [ ] help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152. This relationship is deeper than simply operating in a heavily regulated field, because if MAOs and downstream entities did not perform their tasks, the government would have to carry out the work of administering Medicare itself. While MAOs and downstream entities may operate with less direct supervision than providers under Medicare Part B, they still help "fulfill [a] basic governmental task" by administering Medicare benefits. *Id.* at 153. In this way, the government's relationship to these entities is "more akin to a delegation of CMS administrative obligations than a regulation of otherwise private insurance." *Body & Mind*, 2017 WL 653270, at *5. In sum, MAOs, downstream entities such as Regal, and CMS have "an unusually close [relationship] involving detailed regulation, monitoring, and supervision." *Id.* The Court recognizes that the issue is close, but in light of the Supreme Court's directive that federal officer removal should be liberally construed, the Court finds that Regal "act[ed] under" federal officers in administering Medicare benefits.

*Escarcega v. Verdugo Vista Operating Co., LP*, No. CV 19-9478, 2020 WL 1703181, at *7 (footnotes omitted). Esse Health is similar to Regal in *Escarcega* in that Esse Health has been delegated various responsibilities with regard to the administration of Medicare by various MAOs.

*There Is A Connection Between Plaintiff's Claims And The Official Authority*

38.    The claims in the Complaint "relate to" Esse Health's performance of responsibilities delegated by the MAOs.

39.    The second element of federal officer jurisdiction stems from the requirement in Section 1442(a)(1) that the person seeking removal is being sued "for or relating to any act under color of such office." This "relates to" standard presents a "low bar" such that the second element of federal officer removal "is met if the charged conduct has a 'connection' or 'association' with the federal action." *Minnesota ex rel. Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023).

40.    Plaintiff alleges *inter alia* that Esse Health failed to adequately protect Plaintiff's private information (including PHI), and the private information of the putative class, which was entrusted to Esse Health as a condition of receiving medical care and other services. Compl. ¶¶ 3, 5; *see also* Compl. ¶¶ 93, 152, 161, 191. Although Plaintiff does not identify as a Medicare beneficiary, the allegations in the Complaint are sufficiently broad to encompass Esse Health's patients who are insured through Medicare and have elected coverage under Medicare Part C. *See* Compl. ¶ 131 (defining the putative class); Compl. ¶ 136 (alleging the putative class is comprised of "thousands" of individuals). Indeed, based on Esse Health's investigation to date, a significant amount of the notices being sent by Esse Health relating to the cybersecurity incident are addressed to current or former patients who are insured through Medicare and have elected coverage under MA plans. *See* Dec. of Sean McLaughlin, ¶¶ 8, 11. At least some of these individuals are likely part of the putative class as defined in the Class Action Complaint. *Id.* at ¶ 8.

41.    In order for Esse Health to perform its delegated responsibilities with respect to Medicare beneficiaries, Esse Health collects, analyzes, and stores various information relating to

its MA plan members and their healthcare. *Id.* at ¶ 7. For example, as part of its management of risk and quality improvement function, Esse Health collects, analyzes, and stores certain financial and clinical data relating to the various types of healthcare services provided to its MA plan members. *Id.* The information that Esse Health collects, analyzes, and stores to perform its delegated responsibilities includes some of the private information that Plaintiff alleges was compromised as a result of the cybersecurity incident forming the basis for Plaintiff's claims. *Id.* In other words, Plaintiff's claims relate to Esse Health "acting under" a federal officer because Plaintiff's claims are premised, at least in part, on Esse Health's alleged failure to protect private information that Esse Health collected, analyzed, and stored in the performance of the responsibilities that were delegated to it by the MAOs.

### *Esse Has A Colorable Federal Defense*

42.    A federal defense does not have to be "clearly sustainable in order to support removal under § 1442(a)(1)." *Jacks*, 701 F.3d at 1235. "For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate." *U.S. v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).

43.    Esse Health has a colorable federal defense to Plaintiff's claims. Plaintiff claims *inter alia* that Esse Health breach duties under HIPAA and the FTC Act. *See* Compl. ¶¶ 87, 89-94. These claims lack merit because Esse Health complied with the requirements of HIPAA and the FTC Act (to the extent they apply to Esse Health) as it relates to the protection and/or security of PHI and PII in its possession. Esse Health's defense that it complied with HIPAA and the FTC Act (i.e., that Esse Health did not violate its alleged duties under HIPAA or the FTC Act) is a colorable federal defense. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Asosoc. of Phila.*, 790 F.3d 457, 473-74 (3d Cir. 2015) (holding that the

Federal Community Defender raised a colorable federal defense by claiming that it did not violate the federal statute at issue); *Doe I v. UPMC*, No. 2:20-CV-359, 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020) ("Because UPMC denies violating its duties under HIPAA, UPMC raises a colorable federal defense."); *Todd*, 245 F.3d at 693 (holding the claim that the federal Freedom of Information Act shields the United States from liability presents a colorable federal defense).

*Esse Is A "Person" Under Section 1442(a)*

44.      Esse is a corporation and therefore a "person" under Section 1442(a). *Jacks*, 701 F.3d at 1230 n.3 ("And, the 'person' contemplated by the federal officer removal statute includes corporations."), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230 (2021).

**CONCLUSION**

45.      For the foregoing reasons, removal of the State Court Action to this Court is proper under 28 U.S.C. §§ 1331, 1367(a), 1442(a), 1441, 1446, and 1453.

46.      Concurrent with the filing of this Notice of Removal, Esse Health is (a) providing Plaintiff with written notice of the filing of this Notice of Removal, and (b) filing a copy of this Notice of Removal with the Clerk of the State Court, as required by 28 U.S.C. § 1446(d).

47.      Esse Health's removal is timely because Esse filed a copy of this Notice of Removal in this Court and in the State Court within 30-days of being served with the summons and the Complaint. *See* 28 U.S.C. § 1446(b) & (d); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

48.    Removal to the United States District Court for the Eastern District of Missouri, Eastern Division, is proper under 28 U.S.C. § 1441(a), because this forum embraces the State Court.  *See* 28 U.S.C. § 105(a)(1) ("Missouri is divided into two judicial districts to be known as the Eastern and Western Districts of Missouri.  (a) The Eastern District Comprises three divisions. (1) The Eastern Division comprises the counties of . . . Saint Louis . . . .").

49.    Consistent with Local Rule 2.02, this Notice of Removal is accompanied by a completed Civil Cover Sheet (**Exhibit B**), an Original Filing Form (**Exhibit C**), and a separately-filed Disclosure Statement.

50.    Esse Health has given the undersigned attorney authority to sign and file this Notice of Removal.

51.    Esse Health reserves all of its defenses, including, without limitation, the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendant American Multispecialty Group, Inc. d/b/a Esse Health removes to this Court the action captioned as *Wippold v. American Multispecialty Group, Inc. d/b/a Esse Health*, Cause No. 2025SL-CC00957, currently pending in the Circuit Court of St. Louis City, Missouri, to this Court.

Dated: June 18, 2025                    Respectfully submitted,


                                        THOMPSON COBURN LLP

                                        By: */s/ David M. Mangian*
                                            David M. Mangian, MO #61728
                                            Adrian S. Mehdirad, MO #72931
                                            One US Bank Plaza
                                            St. Louis, Missouri  63101
                                            (314) 552-6000 (Telephone)
                                            (314) 552 7000 (Facsimile)
                                            dmangian@thompsoncoburn.com
                                            amehdirad@thompsoncoburn.com

                                        *Attorneys for Defendant American Multispecialty*
                                        *Group, Inc. d/b/a Esse Health*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 18, 2025 a true copy of this document was served via the Court's electronic filing system on all counsel of record, and a copy was sent via regular mail and e-mail to the below:

John F. Garvey
Colleen Garvey
Ellen A. Thomas
Stranch, Jennings & Garvey, PLLC
Peabody Plaza, 701 Market St., Suite 1510
St. Louis, MO 63101
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

Lynn A. Troops
Amina Thomas
Cohenmalad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
ltoops@cohenmalad.com
athomas@cohenmalad.com

Attorneys for Plaintiff


                                        */s/ David M. Mangian*